Filed 2/9/26  P. v. Jenkins CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084227 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE417178) |
| BOBBY JENKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lilys D. McCoy, Judge.  Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance W. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

The principal issue presented by this case will be familiar to nearly every experienced trial lawyer and trial judge. The court makes a pretrial ruling excluding certain evidence and instructs counsel to advise their witnesses of the ruling. Notwithstanding the advisal, in response to an innocuous question, a witness provides an answer that inadvertently runs afoul of the court's pretrial ruling. The opposing party objects, the objection is sustained, the question and answer are stricken, and the jury is instructed to disregard the answer. Later, counsel for the opposing party makes a motion for mistrial, arguing that the jury heard the answer and "the bell can't be unrung." Finding there was no intent on anyone's part to violate the pretrial ruling, the court denies the motion. In closing instructions, it reminds the jurors they are not to consider for any purpose testimony that was ordered stricken.

In deciding if the trial court has committed reversible error, we are not focused on whether the judge permitted the introduction of inadmissible evidence. Indeed, the judge did everything humanly possible to *avoid* the introduction of the objectionable testimony. But sometimes, even that is not enough and the question becomes one of damage control. In the midst of a fast-moving trial, the judge must decide whether something short of a complete do-over can preserve the parties'—in this case, a criminal defendant's—right to a fair trial.

Our review of that decision must necessarily give considerable deference to the trial judge's firsthand observations of the trial proceedings and "feel" for the case. She was in the best position to determine whether the witness's verbal misstep could be cured by an admonition. Here, we do not believe the court abused its discretion in concluding that sustaining defense

2

counsel's objection and striking the objectionable testimony, coupled with a prompt instruction that the jury was to entirely disregard it, was an adequate remedy. We also reject Jenkins's additional argument that there was insufficient admissible evidence to show that he was in possession of the stolen truck. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In late March 2023, the owner of a Ford pickup truck reported the vehicle missing and presumably stolen from his driveway in Ramona. A little more than a week later, someone called the El Cajon police department to report several persons "illegal[ly] lodging" in a vacant house. The 911 call included the license plate number of a truck at the residence, which matched that of the vehicle allegedly stolen from the Ramona driveway.

While police units were responding, another El Cajon officer, Officer Slater, operated a drone that allowed him to observe the people, the residence, and the pickup. A video taken by the drone was played for the jury. It showed two individuals—a Black male (Jenkins) and a Hispanic female—near the vehicle. At some point, both Jenkins and the female got into and exited the truck from the passenger side. The drone footage also showed a third individual—a male—at the house next door talking with the first two people, but this man never left his property or entered the truck.

When the responding officers arrived on scene, they waited out of sight while Officer Slater assessed the situation. During this time, they became aware that the truck had been moved from the curb and reparked in the driveway of the residence. At some point, Slater informed the other officers that Jenkins and the female were approaching the truck. Jenkins was walking toward the passenger side, while the female approached the driver's

3

side door.  The officers intervened and detained both individuals.  They later informed Jenkins he was under arrest for possession of a stolen vehicle.

A search of the vehicle yielded a number of items, including a purse located on the floorboard of the passenger seat that belonged to the female suspect.  There was also an Apple laptop computer still in its original box. A pair of jeans, a shirt, and other clothing that appeared to belong to a male was found in the rear passenger area behind the driver's seat.  Other clothing and an Ugg boot that appeared to belong to a female were located behind the passenger seat.  There was a prescription bottle with Jenkins's name on it in a compartment on the driver's side door.  Inside the center console was a "to-do" list that included the notation, "OFFER UP! post car."[1]  Another list entry indicated, "Laptop???"  The Ford truck's owner later confirmed that none of the items found in the truck belonged to him.

When interviewed after his arrest, Jenkins referred to the female suspect as his girlfriend. He claimed that a "friend" gave him a ride to the house in the truck, but he refused to provide any information about the friend.  He also denied knowing the truck was stolen.

## DISCUSSION

### A.  *Sufficiency of the Evidence*

As relevant for purposes of this appeal, Jenkins was charged with receiving the stolen Ford pickup truck in violation of Penal Code section 496d.  Noting that a conviction for this offense requires proof that "the defendant had possession of the stolen property," he first argues there was insufficient evidence from which a reasonable jury could conclude that he

---

[1]    The officer who found the list expressed the opinion that this notation reflected an intention to sell the truck.

4

exercised dominion and control over the property.  (*People v. Land* (1994) 30 Cal.App.4th 220, 223–224 (*Land*).)  We disagree.

Our standard of review is so well settled that it requires only a brief summary.  We consider the record in the light most favorable to the judgment, drawing in its favor every inference that can be reasonably deduced from the evidence.  (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.)  "Even where . . . the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might reasonably be reconciled with the defendant's innocence."  (*Ibid.*)  We are required to affirm the judgment if "*any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt."  (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

Possession of stolen property need not be exclusive; two or more individuals can jointly possess stolen property.  (*Land*, *supra*, 30 Cal.App.4th at p. 223.)  Although "mere presence near the stolen property, or access to the location where the stolen property is found is not sufficient evidence of possession," it is "sufficient if the defendant acquires a measure of control or dominion over the stolen property."  (*Id.* at p. 224.)

Here, the evidence was more than sufficient to allow the jury to infer that Jenkins exercised "a measure of control" over the stolen truck. The drone operator, Officer Slater, observed both Jenkins and his girlfriend get in and out of the vehicle.  Indeed, they were the only people observed in the immediate vicinity.  Property associated with each of them found inside suggested that both of them were using the truck.  It was particularly significant that clothes apparently belonging to a male and a prescription bottle bearing Jenkins's name were located on the *driver's side* of the vehicle.

A jury could readily infer from these facts that, at a minimum, Jenkins jointly possessed the stolen Ford truck.

## B.    *Failure to Grant a Mistrial*

### 1.    *Additional facts*

As we have already noted, El Cajon police were alerted to the location of the stolen Ford pickup in a 911 call from someone who lived in the neighborhood. After the initial call, police called back to get additional information from the reporting party and were told that Jenkins had driven the truck into the driveway of the residence. When officers arrived on scene but before they contacted Jenkins and his girlfriend, they talked to the reporting party, who provided them with some photographs he had taken, including one of stolen truck parked on the curb.

Between the date of the incident and the time of trial, the reporting party moved out of state. He was initially listed as a trial witness, but a medical treatment scheduling issue led to the prosecutor proceeding without his testimony. At that point, defense counsel made a motion to exclude any testimony by the officers as to what the reporting party told them. The trial court determined that the statements by the reporting party in the second (return) call were testimonial in nature such that admission would violate the Confrontation Clause. (See generally *Crawford v. Washington* (2004) 541 U.S. 36.) As to the initial 911 call, in order to explain their actions, the court allowed the officers to "say that a call was received about people squatting at a house and there being a [truck] in front of that house." It also stated that the officers could "testify that the reporting party sent [them] photographs."

Later, as Officer Frias (one of the on-scene officers) was testifying, he was asked about a photo provided to him by the reporting party that showed the Ford truck parked on the curb in front of the residence.

6

"[Q:] So this photo was provided to you by who you've described as the reporting party, correct?

"[A:] Yes.

"[Q:] And at this point the car is parked . . . perpendicular to the driveway, correct?

"[A:] Yes. I believe it was one house west [of the subject residence]. Later on as we were planning our tactics to approach, during that—not sure if it was during that or before that, but *they drove the car into the driveway of [the residence].*

"[Defense Counsel]: Objection as to hearsay. . . . I think it violates one of the [in limines] as well.

"[The Court:] Sustained. [¶] Members of the jury, you'll disregard the last line of the answer which said, 'But they drove the car into the driveway of [the residence].' You're not to consider that for any purpose. (Italics added.)

The prosecutor continued without further objection:

"[Q:] You didn't personally see anyone drive the car, correct?

"[A:] No.

"[Q:] But at some point you saw this same car that we see in [the photo] in the driveway of [the residence]?

"[A:] Yes."

A few minutes later, the prosecutor asked Officer Frias about another of the photos he had been given by the absent reporting party, one that depicted Jenkins.

"[Q:] Can you tell me what it's a photo of?

"[A:] It's a photo of the subject that was seen driving the vehicle—

"[Defense Counsel]: Objection. Motion to strike. Sidebar.

7

> "[The Court]:   Granted.  Objection is sustained.  [¶]
> Members of the jury, you'll disregard . . . the entire answer
> given, "Can you tell what it's a photo of?""

Later, outside the presence of the jury, defense counsel made a motion for a mistrial, arguing that "[t]his is critical *Crawford* evidence that has been admitted twice despite a direct admonition to the witness from the [prosecutor] while I was present. . . .  [¶]  The bell cannot be unrung.  These jurors clearly know now that a reporting party saw Mr. Jenkins driving a car.  And I don't think any instruction the court can give can cure this, especially since it's the second time."  In response, the prosecutor asserted that "the curative instruction the court gave to the jury" was the more appropriate remedy.

The trial court denied the motion for mistrial, stating that "I do not in either of these [instances] see that Officer Frias directly violated the court's order, in that he never said and [the prosecutor] never asked, 'Did the reporting party fell you that Mr. Jenkins was driving the vehicle,' or 'Did you ever have a conversation with the reporting party about who was driving the vehicle?' "  Instead, having already stricken the objectionable statement and admonished the jury to disregard the comment, the judge indicated she would bring the officer back into the courtroom to "remind him that he is not to discuss anything directly related to any conversation with the reporting party or to touch on the statements in the way he has done."[2]

---

[2]   After the close of the evidence, the court instructed the jury with a standard instruction (CALCRIM No. 222):  "During the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses.  I ruled on the objections according to the law.  If I sustained an objection, you must ignore the question. . . .  If I ordered testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose."

2.      *The trial court did not abuse its discretion in declining to order a mistrial.*

The trial court in this case *excluded* any testimony by the officers regarding what they were told by the reporting party.  Consistent with this ruling, the court sustained defense objections to two items of testimony, granting motions to strike and instructing the jury not to consider the statements.  Jenkins argues this was insufficient, and that the judge should have ordered a mistrial.

In this circumstance, a trial court is required to grant a mistrial only if it "is apprised of prejudice that it judges incurable by admonition or instruction.  [Citation.]  Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions."  (*People v. Haskett* (1982) 30 Cal.3d 841, 854; accord *People v. Collins* (2010) 49 Cal.4th 175, 198.)  We review a court's decision to deny a mistrial only for abuse of that substantial discretion.  (*People v. Davis* (2005) 36 Cal.4th 510, 553.)

Jurors are presumed to follow the court's instructions, and this presumption applies equally to an admonishment that the jury is to disregard certain testimony.  (*People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1404.)  It is only in an " 'exceptional case' " where the nature of evidence is such that the judge's instruction cannot adequately mitigate the potential prejudice.  (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1429.)  As this court explained more than 40 years ago, "[j]uries often hear unsolicited and inadmissible comments and in order for trials to proceed without constant mistrial, it is axiomatic the prejudicial effect of these comments may be corrected by judicial admonishment; absent evidence to the contrary the error is deemed cured."  (*People v. Martin* (1983) 150 Cal.App.3d 148, 163.)

9

This is not the "exceptional case." Although the first objection was sustained, we question whether Officer Frias's statement disclosed anything of substance that the jury was not already aware of or entitled to know. Based on his own personal knowledge, the officer was allowed to testify without objection that at some point the Ford truck was moved from the curb in front of the residence to the driveway of the residence. The objectionable statement added that "they" drove the truck into the driveway, presumably referring to Jenkins and/or his girlfriend. But the evidence already showed that Jenkins and his girlfriend were the only individuals observed in close proximity to the truck. The thrust of Jenkins's argument was that it was his girlfriend who exercised dominion and control over the truck, not him.[3] To say that "they" drove the truck into the driveway told the jurors nothing more than what they could already infer.

The same cannot be said for the second answer provided by Officer Frias. Although the prosecutor's question was completely proper, the officer surprisingly stated that *Jenkins* "was seen driving the vehicle." But the trial court immediately sustained the objection, struck the testimony, and directed the jury to "disregard the entire answer." (See *People v. Schultz* (2020) 10 Cal.5th 623, 674.) When it instructed the jurors at the conclusion of the case, the court reminded them they were not to consider for any purpose evidence it had previously ordered stricken. (*Ibid.*) In other words, the judge did

---

[3]    Defense counsel argued to the trial court "that the female was really the one who had the majority of control. She was the one with the vehicle. She was able to open the passenger door, remain in the car, put certain objects inside the car and even reach around to the driver's side door and close it." He reprised this same point to the jury in closing argument: "[A]t one point, she had been alone inside the vehicle for some period of time and had been able to reach all the way across to the driver's side door and close it, then get back out and go back into the house or to the back of the house. She had clear possession. She was the one in receipt of the vehicle."

10

everything she could have done short of granting a mistrial.  And while the jury should not have been exposed to this testimony, it is not the sort of "bombshell" disclosure that conscientious jurors cannot be expected to ignore. While unfortunate, the comment did not "irreparably damage[]" Jenkins right to receive a fair trial.  (See, e.g., *People v. Bolden* (2002) 29 Cal.4th 515, 555.)

## DISPOSITION

The judgment is affirmed.


DATO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.

11